CHARLES SEMON, Plaintiff v. MARCHETA SEMON, Defendant

No. COA03-45

(Filed 4 November 2003)

**1. Arbitration and Mediation; Divorce— equitable distribution—appeal for judicial modification—waiver**

Plaintiff waived the right to contend that an equitable distribution arbitration award was imperfect by not applying for judicial modification. N.C.G.S. § 50-55.

**2. Arbitration and Mediation; Divorce— equitable distribution—award—grounds for modifying**

The grounds for modifying an equitable distribution arbitration award set out in N.C.G.S. § 50-55 were not present where plaintiff did not argue miscalculation or mistake, contend that the arbitrator was ruling on a matter not submitted or that the award could not be corrected without affecting the merits, or argue that the award was imperfect in form.

**3. Arbitration and Mediation; Divorce— equitable distribution— correction modification—statutory factors—not present**

Plaintiff did not present any of the three statutory factors for modifying or correcting an equitable distribution arbitration award where he argued that the arbitrator used an incorrect methodology for valuing the marital share of a 401(k) account, that the arbitrator erred by finding that all of the loss in a stock market account was the result of passive market conditions, and that the arbitrator erred in the date chosen for valuing the stock account.

Appeal by plaintiff from order entered 8 October 2002 by Judge William C. Lawton in Wake County District Court. Heard in the Court of Appeals 15 October 2003.

*Robert A. Miller, P.A., by Robert A. Miller, for plaintiff-appellant.*

*Smith Debnam Narron Wyche Saintsing & Myers, L.L.P., by John W. Narron and Cynthia V. McAlister, for defendant-appellee.*

TYSON, Judge.

Charles Semon ("plaintiff") appeals from a consent order entered 8 October 2002 confirming an arbitration award entered 11 September 2002.

## I. Background

Plaintiff and Marcheta Semon ("defendant") were married on 21 December 1985. In 1998, plaintiff's father died and left him an estate worth several hundred thousand dollars, $75,000.00 of which was deposited into a Charles Schwab account on 30 December 1998 in both plaintiff's and defendant's names. Plaintiff became extremely depressed after the death of his father and attempted suicide in early March 1999. Immediately prior to this suicide attempt, plaintiff attempted to liquidate the funds held in the Charles Schwab account and transfer them to his first cousin, whom he considered a brother. Defendant, after talking to plaintiff's physician and an attorney, transferred all the funds in the parties' joint accounts into accounts in her sole name. Defendant also countermanded the liquidation of the funds in the Charles Schwab account and prevented the transfer of the funds to plaintiff's cousin.

Several weeks after plaintiff's suicide attempt, plaintiff returned home. Plaintiff was prescribed numerous medications and testified that he remained in a "drugged state" for approximately fifteen months from the time he was released from the hospital until the end of the marriage. Defendant testified that the parties made joint decisions about investing the money plaintiff had received from his father's estate.

On 10 July 2000, plaintiff and defendant separated. Following the separation, all accounts remained in defendant's sole name. Plaintiff requested that defendant return his property but she refused. On 28 December 2000, defendant sold 1,000 shares of WorldCom stock from the Charles Schwab account at $14.50 per share for a loss of $38.675 per share. Defendant testified that the sole purpose of this sale was to claim a large capital gains loss on the parties' joint 2000 tax return. Defendant was unaware of the $3,000.00 limit on capital losses for stock sales. One week later, defendant bought 725 shares of WorldCom stock at $19.25 per share. Thereafter, defendant conducted no further transactions in the Charles Schwab account.

On 12 April 2001, plaintiff filed his equitable distribution inventory affidavit. Numerous values were listed as unknown on this affidavit on the grounds that defendant had placed all accounts in her sole name and would not provide plaintiff information pertaining to the values. On 19 June 2001, defendant filed her equitable distribution inventory affidavit that included specific values for the items plaintiff listed as "unknown" on his affidavit.

The parties entered into numerous stipulations during a pre-trial conference on 3 June 2002. The parties stipulated that the Chevrolet Silverado truck, listed on Schedule B of the pre-trial order, was worth $28,000.00 and should be distributed to defendant, but disagreed on its classification. The parties also stipulated that they disagreed regarding the value, classification, and distribution of the Charles Schwab account.

At the arbitration proceeding, the arbitrator found both the Charles Schwab account and the Chevrolet Silverado to be plaintiff's separate property. Plaintiff also offered into evidence all of his account statements with regards to his MCI 401(k) account from the date of separation to the hearing. This evidence showed that: (1) at the date of separation the balance was $21,106.00; (2) plaintiff made contributions totaling $16,690.00 after separation; and (3) on the last available statement the total amount was only $26,120.00, substan-

tially less than the $37,797.00 that was in the account after plaintiff's contributions. Plaintiff also produced evidence to show that the investment portion of the Charles Schwab account, placed into defendant's sole name, had drastically declined from $134,965.00 to $16,375.00 since the date of separation. Plaintiff also showed that the cash portion of the account had declined from $20,489.00 to $6,046.00.

## II. Issues

The issues in this appeal are whether the arbitrator erred in: (1) distributing the Chevrolet Silverado truck to plaintiff; (2) utilizing a mathematically incorrect methodology for valuing the marital share of plaintiff's MCI 401(k) account; (3) finding that all the loss in the Charles Schwab account was the result of passive market conditions; and (4) valuing the plaintiff's Charles Schwab account as of the date of division rather than the date of separation.

## III.  Modification and Correction of an Arbitration Award

[1] N.C. Gen. Stat. § 50-55 (2001) of The Family Law Arbitration Act sets forth the procedures for the modification and correction of an arbitration award:

> (a)  Upon application made within 90 days after delivery of a copy of an award to an applicant, the court shall modify or correct the award where at least one of the following occurs: (1) There is an evident miscalculation of figures or an evident mistake in the description of a person, thing, or property referred to in the award; (2) The arbitrators have awarded upon a matter not submitted to them, and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

N.C. Gen. Stat. § 50-55 requires an application to modify or correct an arbitrator's award must be made within ninety days after the delivery of a copy of the award to the applicant. This Court has held that a party who fails to seek judicial modification of an arbitrator's award, pursuant to N.C. Gen. Stat. § 1-567.14, whose provisions are virtually identical to N.C. Gen. Stat. § 50-55, waives their right to contend that the award was imperfect. *Crutchley v. Crutchley*, 53 N.C. App. 732, 738, 281 S.E.2d 744, 747-48 (1981), *rev'd on other grounds*, 306 N.C. 518, 293 S.E.2d 793 (1982).

Here, plaintiff never applied for judicial modification of the arbitration award pursuant to N.C. Gen. Stat. § 50-55. Plaintiff was the party who successfully moved for the original arbitration award to be confirmed by the court. Plaintiff attempts to appeal to this Court for a modification of that award. Since plaintiff failed to meet the requirements of N.C. Gen. Stat. § 50-55, his right to contend that the award is imperfect under the provisions of this statute is waived and the order of the trial court confirming the award is affirmed. *Id.*

## IV. Judicial Review of an Arbitration Award

[2] Presuming this appeal is properly before this Court, we hold that plaintiff failed to establish any of the specific grounds for modifying an award under N.C. Gen. Stat. § 50-55.

> The purpose of arbitration is to settle matters in controversy and avoid litigation. It is well established that parties to an arbitration will not generally be heard to impeach the regularity or fairness of the award. Exceptions are limited to such situations as those involving fraud, misconduct, bias, exceeding of powers and clear illegality. Ordinarily, an award is not vitiated or rendered subject to impeachment because of a mistake or error of the arbitrators as to the law or facts. The general rule is that errors of law or fact, or an erroneous decision of matters submitted to the judgment of the arbitrators, are insufficient to invalidate an award fairly and honestly made.

*Fashion Exhibitors v. Gunter*, 41 N.C. App. 407, 410-11, 255 S.E.2d 414, 417-18 (1979) (internal citations omitted). "[J]udicial review of an arbitration award is confined to determination of whether there exists one of the specific grounds for vacation of an award under the arbitration statute." *Id.*, (citing 6 C.J.S., Arbitration, § 162, p. 427).

As noted earlier, in order to modify or correct an arbitration award under N.C. Gen. Stat. § 50-55, one of three factors must be shown:

> (1) There is an evident miscalculation of figures or an evident mistake in the description of a person, thing, or property referred to in the award; (2) The arbitrators have awarded upon a matter not submitted to them, and the award may be corrected without affecting the merits of the decision upon the issues submitted; or (3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

Our Supreme Court has interpreted the legislative intent of N.C. Gen. Stat. § 1-567.14, whose provisions are virtually identical to N.C. Gen. Stat. § 50-55, in *Cyclone Roofing Co. v. LaFave Co.* and held that:

> [O]nly awards reflecting mathematical errors, errors relating to form, and errors resulting from arbitrators['] exceeding their authority shall be modified or corrected by the reviewing courts. . . . If an arbitrator makes a mistake, either as to law or fact [unless it is an evident mistake in the description of any person, thing or property referred to in the award], it is the misfortune of the party. . . . There is no right of appeal and the Court has no power to revise the decisions of "judges who are of the parties' own choosing."

312 N.C. 224, 236, 321 S.E.2d 872, 880 (1984) (internal citations omitted). The Court explained that:

> [a]n award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus . . . arbitration instead of ending would tend to increase litigation.

*Id.* This Court has held that:

> [I]n providing that awards could be modified or corrected for "evident miscalculation of figures", we think our legislature had reference only to mathematical errors committed by arbitrators which would be patently clear to a reviewing court. G.S. 1-567.14(a)(1) is not an avenue for litigants to persuade courts to review the evidence and then reach a different result because it might be interpreted differently. Such an interpretation of the statute would completely frustrate the underlying purposes of the arbitration process.

*Gunter*, 41 N.C. App. at 413, 255 S.E.2d at 419.

Plaintiff argues that the arbitrator erred in distributing the Chevrolet Silverado truck to defendant. However, plaintiff fails to argue that any of the three factors under N.C. Gen. Stat. § 50-55 are present to support a modification or correction of the arbitration award. Plaintiff does not argue that the award was a miscalculation of figures or an evident mistake in the description of the Chevrolet

Silverado. Plaintiff does not argue that the arbitrator ruled on a matter not submitted to him or that the award could be corrected without affecting the merits of the decision. Further, plaintiff does not argue that the award was imperfect in form. Without any of these factors present, this Court has no authority to modify or correct the award of the arbitrator.

[3] Plaintiff argues in his remaining assignments of error that: (1) the arbitrator utilized a mathematically incorrect methodology for valuing the marital share of plaintiff's MCI 401(k) account, (2) the arbitrator erred in finding that all the loss in value of the Charles Schwab account, titled in the name of defendant, was the result of passive market conditions, and (3) the arbitrator erred in valuing the plaintiff's Charles Schwab account as of the date of the division rather than the date of separation.

Again, plaintiff fails to argue any of the three factors required by N.C. Gen. Stat. § 50-55 are present. Plaintiff fails to argue that the arbitrator's methodology is an "evident miscalculation of figures" that is "patently clear to a reviewing court." *Id.* Plaintiff merely argues that the arbitrator should have used a different methodology in valuing the MCI 401(k) account and Charles Schwab account and determining the amount of loss in the Charles Schwab account. Plaintiff fails to show what formula should have been used by the arbitrator to value the accounts. Plaintiff is unable to determine exactly the correct value of the accounts. This Court, in construing a statute virtually identical to N.C. Gen. Stat. § 50-55(a)(1), stated that N.C. Gen. Stat. § 1-567.14(a)(1) "is not an avenue for litigants to persuade courts to review the evidence and then reach a different result because it might be interpreted differently." *Id.* Plaintiff's assignments of error are overruled.

### V. Conclusion

Plaintiff failed to follow the statutory requirements for modifying or correcting an arbitration award pursuant to N.C. Gen. Stat. § 50-55 and has waived his right to contend the award is imperfect. Plaintiff has also failed to show that any of the three factors needed to modify or correct an award under N.C. Gen. Stat. § 50-55 were present. The arbitrator's award as confirmed by the trial court is affirmed.

Affirmed.

Judges McCULLOUGH and BRYANT concur.